## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| TONEY A. SCHLOSS, *et al.* | * | |
| | * | |
| v. | * | Civil No. JFM-15-1938 |
| | * | |
| MICHAEL LEWIS, *et al.* | * | |
| | ****** | |

### MEMORANDUM

Plaintiffs Toney A. Schloss and Stuart Schloss bring suit against defendants Michael

Lewis and William R. Abey seeking damages for violations of the First Amendment, Fourth

Amendment, Fifth Amendment, and Fourteenth Amendment pursuant to 42 U.S.C. § 1983; the

Maryland Declaration of Rights; and for intentional infliction of emotional distress. Now

pending are defendants' separate motions to dismiss, or in the alternative, for summary

judgment. The parties have fully briefed the motions, and no oral argument is necessary. *See*

Local Rule 105.6. For the reasons below, Lewis's motion is granted in part and denied in part

without prejudice and Abey's motion is granted.

### BACKGROUND

The parties' dispute arises out of a series of events triggered by defendant Michael

Lewis's search of plaintiff Toney Schloss's phone at the Centreville Day Fair on June 30, 2012.

An adult fairgoer, Ms. Brinkley, and her 12-year-old child, accused Schloss of taking photos of

the 12-year-old child with his phone. (ECF No. 25, Ex. 1, ¶¶ 2, 4, 8). Acting on this

information, Lewis, a Centreville police officer, began searching for Schloss at the fair. *Id.* at ¶¶

9–10. Upon locating Schloss, Lewis questioned him regarding the Brinkleys' complaint and

asked Schloss for his phone. (ECF No. 16, Ex. 1). Schloss refused to turn over the phone. *Id.*

1

At this point, Lewis placed Schloss under the guard of other officers and left to question the Brinkleys further—Ms. Brinkley's daughter told Lewis that Schloss asked her for her phone number, asked her if she had a boyfriend, asked her if she would like to kiss a boy, and told her that she was the "prettiest girl that he's seen." *Id.* When Lewis left the Brinkleys to consult, over the phone, with Queen Anne's County State's Attorney Lance Richardson regarding the situation, a fellow officer informed Lewis that Schloss had started deleting photographs from his phone. *Id.* Lewis returned to where Schloss was being held and again asked for his phone. Schloss refused to hand over the phone and after a struggle, Lewis gained possession of the phone and searched the phone for images.[1] *Id.* Lewis identified over 30 photographs of young girls, some in compromising sexual positions and some with sexual organs interposed on their photographs. (*See* ECF No. 16, Ex. 1; ECF No. 17, Ex. 11). Although his search of the phone was not complete, Lewis accidently locked himself out of the phone and Schloss refused to enter his passcode. (ECF No. 17, Ex. 1). Lewis again called Richardson to advise him of the situation—after that conversation, Lewis told Schloss he was free to go, but kept Schloss's phone. (ECF No. 25, Ex. 1, ¶ 24). According to Schloss, the detainment lasted at least 75 minutes. *Id.* at ¶ 13.

Almost a week after the initial encounter, on July 6, another officer of the Queen Anne's County Sheriff's Office, Christopher Schwink, submitted an application and affidavit in support of a search warrant for Schloss's cell phone. The District Court for Queen Anne's County issued the search warrant (ECF No. 25, Ex. 1, ¶ 34), and a search of the phone resumed.

After they searched the phone pursuant to the warrant, the Centreville Police Department asked the Maryland State Police for assistance and the Maryland State Police staffed defendant

---

[1] The parties dispute whether Schloss consented to the phone search, with Lewis claiming he did, and Schloss claiming he did not.

William R. Abey on the case. (ECF No. 17, Ex. 1, ¶ 4).  Upon reviewing Lewis's report,

speaking to him, and reviewing evidence from Schloss's phone, Abey applied for a second

warrant alleging that Schloss was "involved in the possession of child pornography in Queen

Anne's County." (ECF No. 25, Ex. 1, ¶ 45). Before formally filing his application for a warrant,

Abey submitted the application for review to two prosecutors in the Queen Anne's County

State's Attorney's Office—Richardson and Deputy State's Attorney Christine Dulla-Rickard.

(*See* ECF No. 17, Exs. 7, 9). In the application, Abey requested permission to again search

Schloss's phone and to search Schloss's residence for electronic devices, computers, data storage

devices, cameras, and media storage devices. (ECF No. 17, Ex. 5). The District Court for Queen

Anne's County issued the warrant and state police executed the warrant at Schloss's residence on

August 10 at 4:45 am (ECF No. 17, Ex. 1, ¶ 60), recovering "[c]ell phones, computers, the novel

'Lolita,' a text book entitled 'Sexual Behavior of the Human Female,' and other personal

property, papers and writings."[2] (ECF No. 4, ¶ 82).  Abey also alleges that he found over one

hundred additional photographs of child pornography on a protected portion of Schloss' cell

phone. (ECF No. 17, Ex. 1, ¶ 6).  Schloss alleges that during the search, the police "forcibly

restrained . . . [and] hand cuffed" him, causing him to suffer recurring pain in his left arm and

back. *Id.* at ¶ 81.

　　After the search, Abey signed an application for a statement of charges—which Dulla-

Rickard and Richardson again reviewed—and a Maryland judicial officer formally charged

Schloss with 186 criminal law violations, including 177 counts of misdemeanor possession of

child pornography, seven counts of felony creation of a computer image of a minor child

---

[2] On the same day, Schloss alleges that Abey called Stuart Schloss, Toney's father, to tell him that his son was under arrest for possession of child pornography and that Toney Schloss had "butt fucked his daughter with a toy shark." (ECF No. 1, ¶ 146) (internal alterations omitted).

engaging in sexual conduct, and one count of possession of a controlled dangerous substance. (ECF No. 4, ¶¶ 83, 86–89). Schloss posted $10,000 bail and was released. (ECF No. 4, ¶ 103). Concurrent with the arrest, the Maryland State Police issued a news release informing the public that they had arrested Schloss and charged him with possession of child pornography. (ECF No. 4, ¶ 112).

On September 7, the state dropped all seven felony charges against Schloss. On the same day, Abey sought another warrant for information related to Schloss's email account, which was again reviewed by Dulla-Rickard and Richardson. (ECF No. 17, Ex. 1, ¶ 5). About four months later, Dulla-Rickard filed a criminal information report in the District Court for Queen Anne's county and another arrest warrant was issued for Schloss charging him with four counts of possession of child pornography. The state detained Schloss and he was released upon posting $5,000 bail. (ECF No. 4, ¶¶ 137–38).

On March 7, 2013, the state, after dropping all other charges, tried Schloss on one count of possession of child pornography in the Queen Anne's County District Court. The court entered a judgment of acquittal at the close of the state's case-in-chief. Toney Schloss now sues Michael Lewis for violations of his First, Fourth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 (Counts I–III); and violations of his Article 24 rights under the Maryland Declaration of Rights (Count VII). Toney Schloss sues William Abey for violations of his Fourth, Fifth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 (Counts IV–VI); and violations of his Article 24 and 26 rights under the Maryland Declaration of Rights (Counts VIII–XIII). Lastly, Stuart Schloss sues Abey for intentional infliction of emotional distress (Count XIV).

## STANDARD

4

When ruling on a motion to dismiss, a court accepts "all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Courts, however, should not afford the same deference to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). A complaint, relying on only well-pled factual allegations, must state at least a "plausible claim for relief." *Id.* at 678. To determine whether a complaint has crossed "the line from conceivable to plausible," a court must employ a "context-specific inquiry," drawing on the court's "experience and common sense." *Iqbal*, 556 U.S. at 680.

Under Federal Rule of Civil Procedure 56(c), a court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Accordingly, when reviewing a motion for summary judgment, the court must look at facts and inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

While the moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact, trial courts have an obligation to prevent "factually unsupported

5

claims and defenses from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex*, 477 U.S. at 323–24). Therefore, in response to a properly supported motion for summary judgment, the non-moving party must, by affidavit or other evidentiary showing, set out specific facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 248–49; *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970). A court should also enter summary judgment when a party fails to make a showing sufficient to establish elements essential to a party's case, and on which the party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

## ANALYSIS

Defendants Abey and Lewis have both filed motions to dismiss, or, in alternative, for summary judgment. As an initial matter, I address the posture of defendants' motions, which defendants filed before any discovery began.

Generally, summary judgment "may only be granted after the nonmoving party has had 'adequate time for discovery.'" *Tinch v. United States*, 189 F. Supp. 2d 313, 315 (D. Md. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). This rule, however, does not apply when the nonmoving party has not "made an attempt to oppose [a conversion to a motion for summary judgment] on the grounds that more time was needed for discovery or moved for a continuance to permit discovery." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). Typically, to oppose a conversion, a nonmovant "must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, 'for specified reasons, it cannot present facts essential to justify its opposition' without needed discovery." *Hart v. Lew*, 973 F. Supp. 2d 561, 573 (D. Md. 2013). Here the nonmovants—plaintiffs—have neither submitted Rule 56(d) affidavits, nor opposed defendants' motions for summary judgment;

instead, plaintiffs have implicitly acquiesced to the conversion of defendants' motions by submitting their own matters outside the pleadings for the Court's consideration. (*See, e.g.*, ECF No. 24, Ex. 1). Accordingly, since plaintiffs do not appear to oppose defendants' attempts to convert their motions before discovery, I consider defendants' motions as motions for summary judgment.

## A.   Defendant Michael Lewis's Motion

I address Lewis's motion first. Lewis's interaction with plaintiff Toney Schloss encompasses his stop and questioning of Schloss; his struggle with Schloss over Schloss's phone; and his search of Schloss's cell phone. Schloss asserts four counts against Lewis: three counts alleging violations of the First, Fourth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 (Counts I–III), and one count alleging violations of Article 24 of the Maryland Declaration of Rights (Count VII).

## I.   § 1983 First Amendment Claim (Count I)

In Count I of his Complaint, plaintiff Toney Schloss alleges that Officer Lewis violated his First Amendment rights of free association and free speech by preventing Schloss from taking photographs with his cell phone at the Centreville Day Fair. Because the First Amendment does not protect Schloss's ability to take non-expressive photographs at the Fair, however, I grant Lewis's motion for summary judgment on the claim.

The First Amendment's protections cover not only speech but also conduct that is "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (internal quotation marks omitted). To invoke the First Amendment's protections, a plaintiff must show that he had: "(1) a message to be communicated; and (2) an audience to receive that message, regardless of

7

the medium in which the message is sought to be expressed." *Montefusco v. Nassau Cty.*, 39 F.

Supp. 2d 231, 242 (E.D.N.Y. 1999) (citing *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of*

*Boston*, 515 U.S. 557, 568 (1995)). In other words, to plead a viable free speech or a free

association claim under the First Amendment, a plaintiff must show that his underlying conduct

was either communicative or expressive. *See Willis v. Town of Marshall*, 426 F.3d 251, 257–59

(4th Cir. 2005) (holding that the First Amendment does not protect nonexpressive conduct).

Because the First Amendment protects only conduct that is expressive or communicative, courts

have held that the First Amendment does not protect photography lacking such properties. *See*

*Larsen v. Fort Wayne Police Dep't*, 825 F. Supp. 2d 965, 980 (N.D. Ind. 2010) ("The First

Amendment, however, does not protect purely private recreational, non-communicative

photography."); *Porat v. Lincoln Towers Cmty. Ass'n*, No. 04-3199 (LAP), 2005 WL 646093, at

*4 (S.D.N.Y. Mar. 21, 2005) (noncommunicative photography is not covered by the First

Amendment) *aff'd*, 464 F.3d 274 (2d Cir. 2006).

Here, Schloss fails to generate any dispute of material fact, or indeed, make any

allegation at all that his photography was expressive or communicative—that is, he makes no

move to show that he advanced a message with his photography, or that he intended to share his

photography with an audience.[3] Thus, Toney Schloss has not proffered facts showing the First

Amendment protected his conduct, and I grant Lewis's motion for summary judgment with

respect to Count I of plaintiffs' complaint.

**II.       § 1983 Fourth Amendment Claim (Count II)**

---

[3] Further, even if the First Amendment did protect Schloss's photography, I would still grant
Lewis's motion for summary judgment on Count I because a right to such activity is not "clearly
established," and thus, defendant Lewis is entitled to qualified immunity on this count. *See*
*Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (holding that officers were entitled to qualified
immunity because the First Amendment right they allegedly had violated was not "clearly
established").

In Count II of plaintiffs' complaint, Toney Schloss alleges that Lewis violated his Fourth Amendment rights by unlawfully searching and seizing his cell phone and detaining him. Lewis argues that Schloss's claim fails because Lewis's search and seizure was lawful, or alternatively, that he is immune under the doctrine of qualified immunity.

The doctrine of qualified immunity protects police officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal quotation marks omitted). The "driving force behind [the] creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials be resolved prior to discovery." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). If a defendant officer can show either that no reasonable jury could find that his conduct violated a constitutional right, or that the right at issue was not "clearly established in the specific context of the case," then he will be entitled to a grant of qualified immunity. *Merch. v. Bauer*, 677 F.3d 656, 662 (4th Cir. 2012). A rule is "clearly established" when existing appellate precedent "placed the statutory or constitutional question beyond debate" so that it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).

Here, Schloss claims that after he took photographs of a 12-year-old girl with her consent, Lewis unlawfully "pursued, confronted, accosted, apprehended and detained" Schloss. (ECF No. 4, ¶¶ 1–6). Thereafter, he claims Lewis, and other armed officers, detained him for at least 75 minutes without his consent and that Lewis "ripped" his cell phone from his hand and searched the phone. (ECF No. 4, ¶¶ 8–11). Schloss claims Lewis committed three Fourth

9

Amendment violations: an unlawful detainment, an unlawful seizure of Schloss's phone, and an unlawful search of the phone. I address each in turn.

### a.  Seizure of Schloss's Person

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Under the Fourth Amendment, a police officer's seizure of a person for an investigatory stop—known as a *Terry* stop, *see Terry v. Ohio*, 392 U.S. 1 (1986)—is permitted if he has a "reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). To detain a person for longer than an investigatory stop, however, requires a police officer to have probable cause of a crime. The parties initially dispute whether Lewis's detainment of Schloss constituted a consensual encounter, a *Terry* stop, or an arrest requiring probable cause.

Viewing the facts in the light most favorable to plaintiff, I first determine that the stop was not consensual. According to Toney Schloss's sworn affidavit, Lewis forced Schloss to remain on the fairgrounds against his will. (ECF No. 24, Ex. 1, ¶ 12). Consequently, although Lewis contends otherwise, for the purposes of summary judgment, the initial encounter between Lewis and Schloss was a seizure implicating the Fourth Amendment.

Next, I find that Lewis's initial seizure of Schloss constituted a *Terry* stop and that Lewis had at least a "reasonable, articulable suspicion" that Schloss had committed a crime. The facts relevant to Lewis's seizure are as follows: Ms. Brinkley informed Lewis that Schloss was attempting to take pictures of her 12 year-old daughter with a cell phone. (ECF No. 24, Ex. 1). Lewis, upon locating Schloss, observed that Schloss was "extremely nervous and his hands were trembling." *Id.* Lewis then questioned Brinkley's daughter, who corroborated her mother's

account and told Lewis that Schloss asked her for her phone number, asked her if she had a boyfriend, asked her if she would like to kiss a boy, and told her that she was the "prettiest girl that he's seen." *Id.* These facts are more than sufficient to show a "reasonable, articulable suspicion that criminal activity [was] afoot;" *Wardlow*, 528 U.S. at 123, accordingly, Lewis's initial seizure of Schloss was justified.

The inquiry then becomes whether Lewis was justified in continuing to detain Schloss, and whether the encounter morphed into something beyond a *Terry* stop requiring probable cause. While a *Terry* seizure or search "must be must be carefully tailored to its underlying justification," *Florida v. Royer*, 460 U.S. 491, 500 (1983); "[i]f the purpose underlying a *Terry* stop—investigating possible criminal activity—is to be served, the police must under certain circumstances be able to detain the individual for longer than [a] brief time period" to determine "if in fact an offense has occurred in the area." *Michigan v. Summers*, 452 U.S. 692, 700 n.12 (1981) (internal quotation marks omitted). In *United States v. Place*, 462 U.S. 696, 710 (1983), the Court ruled that a 90-minute detention of a suspect's luggage was impermissible, but also noted that it was not imposing a "rigid time limitation" on *Terry* stops because "[s]uch a limit would undermine the equally important need to allow authorities to graduate their responses to the demands of any particular situation." *Id.* at n. 10; *see also United States v. Sharpe*, 470 U.S. 675, 685 (1985) ("[O]ur cases impose no rigid time limitation on Terry stops"). In gauging the reasonableness of a stop, courts must look not only to the length of stop, but also to "the law enforcement purposes to be served by the stop, the time reasonably needed to effectuate those purposes, and whether the police diligently pursued their investigation." *United States v. Bullock*, 632 F.3d 1004, 1015 (7th Cir. 2011) (applying *Sharpe*).

11

Here, Schloss argues that the *Terry* stop transformed into a full-blown arrest because Lewis detained him for "at least 75 minutes." (ECF No. 24, Ex. 1, ¶ 13). While this allegation certainly strengthens Schloss's claim, under *Place* and *Sharpe*, it is not by itself sufficient to show that an arrest occurred. Beyond this solitary factual allegation, Schloss fails to add further context to his claim. For instance, he does not describe when the relevant events of the detainment occurred; or plead facts showing that the police failed to diligently pursue "a means of investigation that was likely to confirm or dispel their suspicions quickly." *Sharpe*, 470 U.S. at 687. Even had he made these allegations, the record shows that Lewis acted reasonably and diligently in investigating Schloss. In his incident report, Lewis stated that, upon initially detaining Schloss, he asked Schloss questions related to the Brinkleys' complaint. (ECF No. 16, Ex. 1). He then stated that he went back to the Brinkleys to ask them more questions, and contacted Queen Anne's County State's Attorney Richardson for guidance on the situation. *See id.* While on the phone with Richardson, a fellow officer informed him that Schloss was deleting photographs from his phone, and Richardson directed Lewis to seize the phone. At this point, he rushed back to seize the phone. After seizing and searching the phone, and further conferring with Richardson, Lewis released Schloss. Lewis's actions constitute a reasonable and expedient investigation of the Brinkleys' complaint. Schloss has proffered nothing at this stage that would generate a material dispute as to Lewis's account and indeed, Schloss does not even appear to directly challenge Lewis's version of events. (*See* ECF No. 25, pp. 5–6). Therefore, Schloss does not create a material issue of fact showing Lewis's *Terry* stop was unreasonable or that the *Terry* stop transformed into an arrest.

Lastly, even assuming Lewis's detainment of Schloss was unlawful, Lewis is entitled to qualified immunity. As noted above, the Supreme Court has held that there is "no rigid time

limitation" for *Terry* stops and that courts must look to a number of other factors, aside from the length of detainment, in determining the reasonableness of a *Terry* stop. Accordingly, given that there is no "clearly established" rule stating that a detainment for 75 minutes—justified by reasonable suspicion and during which a police officer diligently continued their investigation—is unlawful under the Fourth Amendment, I find that Lewis is entitled to qualified immunity.

### b. *Seizure of Schloss's Phone*

Generally, "a seizure of personal property is per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *Place*, 462 U.S. at 701. Here, it is unquestioned that Lewis seized Schloss's cell phone without a warrant.

The general rule against warrantless searches is subject to a number of exceptions, including the exigent circumstances exception, which covers situations where police act "to prevent the imminent destruction of evidence." *Kentucky v. King*, 563 U.S. 452, 455 (2011). To demonstrate the existence of the exigent circumstances exception, an officer is required to show that their seizure was reasonable, *i.e.*, an officer must have "probable cause to believe that the item seized constitutes evidence of criminal activity." *United States v. David*, 756 F. Supp. 1385, 1392 (D. Nev. 1991); *see also Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *United States v. Brown*, 701 F.3d 120, 126–27 (4th Cir. 2012). Lewis argues that the exigent circumstances exception applies to the instant case. I agree.

Here, a reasonable officer would have believed that seizure of the phone was necessary to prevent the imminent destruction of evidence and that there was probable cause to believe the item seized constituted evidence of criminal activity. First, the record shows it was reasonable to believe evidence was being destroyed—it is undisputed that a fellow officer informed Lewis that

13

Schloss appeared to be deleting items on his phone. (ECF No. 16, Ex. 1). Second, it was reasonable to believe that the item seized constituted evidence of criminal activity. As noted above, it is undisputed that Ms. Brinkley informed Lewis that Schloss was attempting to take pictures of her 12 year-old daughter and that Ms. Brinkley's daughter told Lewis that Schloss had also asked her inappropriate questions. *Id.* Lewis, upon locating Schloss, noted that Schloss was "extremely nervous and his hands were trembling." *Id.* Further, Lewis received instruction from State's Attorney Richardson, telling him to seize the phone. *Id.* Accordingly, Lewis rightly believed that "prompt action was necessary to prevent . . . destruction of relevant evidence," *David*, 756 F. Supp. at 1392, and I find that Lewis was justified in seizing the phone.

Alternatively, because "the absence of probable cause would not have been evident to an objectively reasonable officer in these circumstances," Lewis is entitled to qualified immunity on the claim. *McKinney v. Richland Cty. Sheriff's Dep't*, 431 F.3d 415, 419 (4th Cir. 2005).

   *c.  Search of Schloss's Phone*

Toney Schloss also alleges that Lewis violated the Fourth Amendment by searching his phone for photographs. Lewis initially contends that because Schloss had not locked his phone before Lewis took it from him, Schloss did not have a "reasonable expectation of privacy" with respect to the photographs on his phone and Lewis's conduct did not implicate the Fourth Amendment.[4] (ECF No. 26, p. 9). This argument is unavailing—just as a person would have their reasonable expectation of privacy violated if a police officer viewed their emails on an

---

[4] Lewis also contends that he was able to see the photographs on "the screen of the phone," and thus, Schloss had no reasonable expectation of privacy with respect to the photographs. As a matter of common sense, Lewis's factual premise is unpersuasive. Anyone familiar with using a cell phone knows that viewing multiple photographs on a cell phone requires navigating to a photo gallery and scrolling through those photographs. It is nearly impossible for all of the approximately thirty photographs at issue here to be immediately viewable on "the screen of the phone," and thus, I find that Schloss did have a reasonable expectation of privacy in the photographs on his phone—unlocked or locked.

unlocked computer, so too did Schloss have his reasonable expectation of privacy violated when Lewis searched for photographs on his unlocked cell phone. *Cf. United States v. DiTomasso*, 56 F. Supp. 3d 584, 591 (S.D.N.Y. 2014) (holding that a defendant maintains a reasonable expectation of privacy in emails). At the time of the search, it was "clearly established" that a search of a cell phone implicated the Fourth Amendment. *See United States v. Murphy*, 552 F.3d 405, 411 (4th Cir. 2009) (referring to a police officer's examination of the contents of a cell phone as a "warrantless search"). Lewis himself seems to acknowledge that his actions constituted a search—he admits that Richardson "accurately conveyed" to him that Lewis "would need consent or a search warrant" to search the phone. (ECF No. 16, p. 14). Therefore, I find that no reasonable officer would have understood the search of Schloss's phone as anything less than an intrusion of Schloss's reasonable expectation of privacy.

Having concluded that Lewis's search of Schloss's phone implicated the Fourth Amendment, I turn to consider whether his search was reasonable. I find first that the right to be free from a warrantless cell phone search is "clearly established." "[I]t is a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Mincey v. Arizona*, 437 U.S. 385, 390 (1978) (internal quotation marks omitted). The clarity of this legal rule is evidenced by Richardson's direction to Lewis that he "would need consent or a search warrant" to search the phone. (ECF No. 16, p. 14). It would have been evident to any reasonable officer then that, in order to conduct a warrantless search, the search must fall under an exception to the Fourth Amendment's warrant requirement.

Lewis avers that two exceptions—the consent and exigent circumstances exceptions—apply to his search of the phone. As to the consent exception, I find there is a genuine dispute of material fact regarding its applicability. In Lewis's investigatory report, he states that after seizing the phone from Schloss, he advised him that he was going to get a search warrant to search the phone—Schloss then told him he could look at the phone and gave him the passcode to the phone. (ECF No. 16, Ex. 1). By contrast, Schloss, in a sworn affidavit, states that "[b]ecause the cellphone was not locked at the moment that Pfc. Lewis ripped it from my hand, Pfc. Lewis was able to view the contents of the cellphone without asking me for the passcode." (ECF No. 25, Ex. 1, ¶ 14). He alleges that Lewis conducted the search without his consent. *Id.* at ¶ 15. Either of the parties' accounts is dispositive as to whether the consent exception applies—if Lewis is right, it does; if Schloss is right, it does not. The answer therefore turns on the credibility of each party, and is a question better served for a later stage.

As to Lewis's second asserted exception, the exigent circumstances exception, I find that it does not apply. At the time Lewis searched the phone for photographs, Lewis had already seized the phone. As a result, there was no threat that Schloss would delete evidence. After seizing the phone, the police had ample time to apply for a warrant, and they eventually did, yet Lewis searched the phone without a warrant. Therefore, no exigent circumstances existed, and Lewis's search was not justified by this exception.

For these reasons, I find that there is a genuine dispute of material fact as to the legality of Lewis's search of Schloss's cell phone and further, that there is a genuine dispute of material fact as to whether Lewis is entitled to qualified immunity—that is, whether he violated clearly established law. Accordingly, Lewis's motion for summary judgment is granted as to his seizure

of Schloss's person and phone, but is denied without prejudice as to his search of Schloss's

phone. [5]

### III.    § 1983 Fourteenth Amendment and Article 24 Claims (Counts III, VII)

In Count III of plaintiffs' complaint, Toney Schloss alleges that Lewis violated his

Fourteenth Amendment rights when Lewis seized his cell phone and detained him.  In count VII

of plaintiffs' complaint, Toney Schloss alleges that Lewis violated his rights under Article 24 of

the Maryland Declaration of Rights by unlawfully detaining him and searching his phone.

Article 24 of the Maryland Declaration of Rights is read *in pari materia* with the Fourteenth

Amendment and so I consider both claims together. *See Barnes v. Montgomery Cty., Md.*, 798 F.

Supp. 2d 688, 700 (D. Md. 2011).

While due process claims are typically derivative of Fourth Amendment claims when

they involve the same series of events, *see Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975);

*Taylor v. Waters*, 81 F.3d 429, 436 (4th Cir. 1996), Schloss's procedural due process claim is

precluded on another ground: the Supreme Court's holdings in *Hudson v. Palmer,* 468 U.S. 517

(1983) and *Parratt v. Taylor,* 451 U.S. 527, 539 (1981).  In *Palmer* and *Hudson*, the Supreme

Court held that a procedural due process claim is barred when there is "random, unauthorized"

deprivation of property by a state actor—making predeprivation process, which generally

consists of notice and a hearing, unfeasible—and the state provides adequate post-deprivation

process. *Hudson*, 468 U.S. at 533.  In light of Schloss's accusations that Lewis violated the

Constitution and Maryland Declaration of Rights in detaining him and seizing his cell phone,

Lewis's actions are exactly the type of "random, unauthorized" deprivations encompassed by the

---

[5] I deny Lewis's motion without prejudice because discovery, which may provide further clarity
regarding Lewis's warrantless search, has not yet occurred. *See Stanislaus v. White*, 192 F.
Supp. 2d 426, 433 (D. Md. 2002) (denying a motion for summary judgment without prejudice
because the parties had not started formal discovery).

*Palmer/Hudson* doctrine.  Further, because Lewis was purportedly detaining Schloss and seizing

his cell phone in connection with a criminal investigation, there was no opportunity for

predeprivation process.  *See Fox v. Van Oosterum*, 176 F.3d 342, 348–49 (6th Cir. 1999)

(holding that predeprivation process is unfeasible when police refuse to return evidence

connected to an ongoing investigation).  Lastly, Schloss fails to proffer facts showing there was

insufficient post-deprivation process available to Schloss to secure his own release from

temporary detainment and secure release of his cell phone.  Accordingly, Schloss's Fourteenth

Amendment and Article 24 procedural due process claims fail under *Hudson* and *Parratt*.

Second, to the extent it exists, Schloss's substantive due process claim is precluded.

"Where a particular Amendment provides an explicit textual source of constitutional protection

against a particular sort of government behavior, that Amendment, not the more generalized

notion of substantive due process, must be the guide for analyzing such a claim."  *Albright v.*

*Oliver*, 510 U.S. 266, 266 (1994).  Since the Fourth Amendment provides a constitutional

protection against unlawful searches and seizures, Schloss has no substantive due process claim

against Lewis.  *See Rich v. United States*, 158 F. Supp. 2d 619, 625 (D. Md. 2001) (holding that

a plaintiff could not simultaneously assert § 1983 claims for Fourth Amendment violations and

substantive due process violations arising out of the same search); *Lytes v. Smith*, 11 F. Supp. 3d

527, 538 (D.S.C.) (holding the same) *aff'd*, 585 F. App'x 51 (4th Cir. 2014).  Accordingly, I

grant Lewis's motion for summary judgment on Counts III and VII.

\*     \*     \*

For the stated reasons, I grant in full defendant Lewis's motion for summary judgment

with respect to Counts I, III, and VII.  I grant in part and deny in part without prejudice Lewis's

motion for summary judgment with respect to Count II.

**B.   Defendant Abey's Motion**

Next, I consider defendant Abey's motion to dismiss, or in the alternative, for summary

judgment. Abey's interactions with Schloss include his applications for two warrants—one to

search Schloss's property and another to search materials associated with his email address—and

his application for a statement of charges, which sought charges on 177 counts against Schloss.

Toney Schloss asserts a total of nine claims against Abey: three counts alleging constitutional

violations of the First, Fourth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983

(Counts IV–VI), and six counts alleging violations of Articles 24 and 26 of the Maryland

Declaration of Rights (Counts VIII – XIII). Stuart Schloss, Toney's father, asserts a single count

against Abey for intentional infliction of emotional distress.

**I.   August 2 Search Warrant (Counts IV, VIII, XI)**

Schloss asserts three counts related to defendant Abey's August 2, 2012 application for a

search warrant to search Schloss's home for electronic devices, computers, data storage devices,

cameras, and media storage devices and to again search Schloss's cell phone. Schloss alleges

that because Abey's application and affidavit for the search warrant were not based on probable

cause and "contained deliberate false statements," (ECF No. 4, ¶¶ 168, 186, 204), Abey violated

his Fourth, Fifth, and Fourteenth Amendment rights pursuant to § 1983 (Count IV), his rights

under Article 24 of the Maryland Declaration of Rights (Count VIII), and his rights under Article

26 of the Maryland Declaration of Rights (Count XI).

In Count IV, Schloss appears to allege that Abey violated the Warrant Clause of the

Fourth Amendment, which requires that warrants "(1) be issued by a neutral and detached

magistrate, (2) contain a particular description of the place to be searched, and the persons or

19

things to be seized, and (3) be based upon probable cause, supported by Oath or affirmation."[6] *United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir. 1994) (internal quotation marks and alterations omitted).  It is undisputed that the August 2 warrant fulfills the first two requirements of the Warrant Clause—a neutral magistrate issued the warrant, (*see* ECF No. 4, ¶ 71), and the warrant application and the warrant itself contained a specific description of Schloss's home (*see* ECF No. 17, Ex. 5, pp. 2, 5), and the items to be seized (*see id.* at pp. 6, 7–8).

In assessing whether an officer had probable cause to apply for a warrant, courts look to the totality of circumstances. *Illinois v. Gates*, 462 U.S. 213, 239 (1983).  The Fourth Circuit has held that "probable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest." *United States v. Massenburg*, 654 F.3d 480, 492 (4th Cir. 2011) (internal quotation marks and alterations omitted).  Schloss acknowledges that in applying for the August 2 warrant, Abey relied on Officer Lewis's account of events. Schloss has proffered no evidence or reason why Abey should not have relied on Lewis.  Lewis's account of events provided, in relevant part that: Schloss was "taking photographs of a 12 year old girl, asking her if she has ever kissed a boy and if she wanted to know what it feels like;" Schloss was attempting to hide his phone and was "extremely nervous;" Schloss attempted to erase photographs from his phone; Schloss's phone contained "well over 30" pictures of young girls, most of which "looked to be under the age of 12;" Schloss took pictures of "young ladies/children" at the fair; and Schloss's phone had "numerous photos of young girls bent over,

---

[6] Schloss also alleges that Abey violated his procedural due process rights under the Fifth and Fourteenth Amendments by applying for the August 2 warrant. But, because "[t]he Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of persons or property in criminal cases," *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975), Abey's Fifth and Fourteenth Amendment claims are derivative of his Fourth Amendment claim, and I consider those claims in the context of his Fourth Amendment claim.

some of these pictures had been photo shopped with penises going into the young girl[']s mouths and buttocks." (ECF No. 4, ¶ 52). After being assigned to the case, Abey spoke to Lewis regarding his report and Lewis reiterated the allegations contained in his earlier report. Accordingly, Abey's reliance on Lewis's account was justifiable and was itself likely sufficient to generate probable cause.

There is, however, more. Abey, pursuant to the July 6 warrant to search Schloss's phone, corroborated Lewis's allegations by reviewing the photographs that Lewis had seen. (ECF No. 17, Ex. 1, ¶ 4). Based on his review, he determined that Schloss was likely in possession of child pornography. After conducting the unhappy task of reviewing the photographs that Lewis discovered on Schloss's phone, (ECF No. 17, Ex. 11), I too conclude that both Lewis's and Abey's descriptions of the photographs were materially correct. The photographs depict what appear to young women in compromising sexual positions, and some of the photographs have sexual organs interposed on them. *See id.* One photograph is particularly alarming—it depicts an "unknown young girl in her underwear, with an unknown . . . penis in front of her face . . . [t]his picture was not photo shopped and appeared to be true pornography." (ECF No. 17, Ex. 4; *see also* ECF No. 17, Ex. 11-H). Consequently, the photographs on Schloss's phone were also sufficient to show probable cause of Schloss's possession of child pornography.

Schloss's unsupported allegation that Abey included "deliberate false statements" does not change the result. This allegation—repeated in both Schloss's complaint and opposition to Abey's motion, (ECF No. 4, ¶ 148; *see also* ECF No. 24, pp. 16–17)—without more, amounts to precisely the type of unmoored legal conclusion that I am required to ignore at the summary judgment stage.

Alternatively, even if Abey did not have probable cause to apply for the warrant, he is entitled to qualified immunity. Given that Abey confirmed and corroborated his fellow officer's report regarding Schloss, submitted his application for approval to two prosecutors (ECF No. 17, Ex. 1, ¶ 5),[7] and a neutral magistrate judge approved the warrant application, at the very least, Abey was not "entirely unreasonable" in believing that he had probable cause to apply for a warrant. *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (holding that when a neutral magistrate issues a warrant, an officer's "shield of immunity" is pierced only when "no reasonably competent officer would have concluded that a warrant should issue"). On this ground as well, Abey is entitled to summary judgment.

For the aforementioned reasons, I grant Abey's motion for summary judgment on Count IV of plaintiffs' complaint.

Schloss's Article 24 and 26 claims (Counts VIII, XI) rise and fall with his § 1983 claim. Articles 24 and 26 are read *in pari materia* with the Fourteenth and Fourth Amendment, respectively, *see Barnes v. Montgomery Cty., Md.*, 798 F. Supp. 2d 688, 700 (D. Md. 2011), and the alleged basis for all three counts (IV, VIII, and XI) is the same: that Abey did not have probable cause and the application for the warrant contained "deliberate false statements and falsehoods." (ECF No. 4, ¶¶ 168, 186, 204). Because Schloss has failed to generate a material dispute of fact regarding these issues, I also grant Abey's motion for summary judgment on Counts VII and XI.[8]

---

[7] A police officer's submission of a warrant application to a prosecutor is "compelling evidence and should appropriately be taking into account in assessing the reasonableness of [Abey's] actions." *Wadkins v. Arnold*, 214 F.3d 535, 542 (4th Cir. 2000).

[8] Alternatively, Abey is statutorily immune under the Maryland Torts Claims Act ("MTCA"). The MTCA provides, in relevant part that: "[s]tate personnel . . . are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence." Md. Code

## II.   Statement of Charges (Counts V, IX, XII)

Schloss asserts three counts related to defendant Abey's August 10 application for a

statement of charges. Schloss avers that because Abey's application was not based on probable

cause and "contained deliberate false statements," (ECF No. 4, ¶¶ 172, 192, 210), Abey violated

his Fourth, Fifth, and Fourteenth Amendment rights under § 1983[9] (Count V), his rights under

Article 24 of the Maryland Declaration of Rights (Count IX), and his rights under Article 26 of

the Maryland Declaration of Rights (Count XII).

Schloss has created no genuine issue of fact showing that Abey's application for a

statement of charges was not justified by probable cause, and that the application contained

falsehoods.[10] Schloss appears to allege a Fourth Amendment malicious prosecution claim under

§ 1983. Such a claim is "founded on a Fourth Amendment seizure that incorporates elements of

the analogous common law tort of malicious prosecution." *Lambert v. Williams*, 223 F.3d 257,

262 (4th Cir. 2000). To state a Fourth Amendment malicious prosecution claim, Schloss must

show that "[1] the defendant . . . seized plaintiff pursuant to legal process that was not supported

by probable cause and [2] that the criminal proceedings have terminated in plaintiff's favor."

*Massey v. Ojaniit*, 759 F.3d 343, 356 (4th Cir. 2014) (internal quotation marks omitted).

Ann., Cts. & Jud. Proc. § 5-522(b). Schloss alleges that Abey acted with malice, which requires
a showing that Abey's actions were "characterized by evil or wrongful motive, intent to injure,
knowing and deliberate wrongdoing, ill-will or fraud." *Barbre v. Pope*, 935 A.2d 699, 714 (Md.
2007) (internal quotation marks omitted). Schloss, however, offers only bare legal conclusions
with respect to Abey's intent or motive, (*see* ECF No. 4, ¶¶ 184, 204), and thus, Schloss fails to
generate a material dispute of fact regarding malice. Accordingly, I grant Abey's motion for
summary judgment as to Counts VII and XI on statutory immunity grounds as well.

[9] As before, I consider the §1983 Fifth and Fourteenth Amendment claims together with
Schloss's § 1983 Fourth Amendment claim.

[10] Again, Schloss proffers no evidence—besides factually unsupported allegations—that Abey
included false statements in his application for a statement of charges.

Much of the same probable cause analysis relevant to the August 2 search warrant is also relevant here. First, as noted above, the photographs on Schloss's phone—that both Lewis and Abey viewed—by themselves constituted probable cause of Schloss's possession of child pornography. (ECF No. 17, Ex. 11). Second, Abey consulted with and sought approval from two prosecutors before filing charges. (*Id.* at ¶¶ 7–8; ECF No. 17, Ex. 7, ¶ 4; ECF No. 17, Ex. 9, ¶¶ 5–6). Third, after executing the August 2 warrant, Abey found over one hundred additional photographs on a protected portion of Schloss's cell phone, which he believed were child pornography. (ECF No. 17, Ex. 1, ¶ 6). One of the two prosecutors who approved Abey's application for charges, State's Attorney Richardson, went through each of these photographs with Schloss to determine whether the photographs were child pornography. (ECF No. 17, Ex. 7, ¶ 4). According to the two prosecutors, they, along with Abey, "believed that many of the photographs in Mr. Schloss' possession were minors based on the photographic evidence of their body development." (ECF No. 17, Ex. 9, ¶ 6). Fourth, an independent judicial officer, and not Abey, approved the application and issued the arrest warrant. (ECF No. 17, Ex. 6, p. 3). Taking into account the totality of circumstances, it is clear that Abey had probable cause to file his application for charges and therefore, I grant Abey's motion for summary judgment on this ground.

Alternatively, even if Abey did not have probable cause to apply for the warrant, he is again entitled to qualified immunity. In submitting his application for charges, Abey reasonably relied on Lewis's reports regarding Schloss, discovered new evidence of child pornography, and again submitted his application for approval to two prosecutors. Furthermore, an independent judicial officer issued the arrest warrant and statement of charges. With all that in mind, Abey

was at least reasonable in believing he had probable cause for an application for charges. On this ground too, Abey is entitled to summary judgment.

Schloss's Article 24 and 26 claims (Counts IX, XII) are derivative of his § 1983 claim. Because Schloss has failed to show a reasonable jury could find for him on his § 1983 claim, I also grant Abey's motion for summary judgment on Counts IX and XII.[11]

### III.    September 7 Search Warrant (Counts VI, X, XIII)

Schloss asserts three counts related to Abey's September 7 application for a warrant to search Schloss's email account. Schloss once more avers that because Abey's application was not based on probable cause and "contained deliberate false statements," (ECF No. 4, ¶¶ 176, 198, 216), Abey violated his Fourth, Fifth, and Fourteenth Amendment rights under § 1983 (Count VI), his rights under Article 24 of the Maryland Declaration of Rights (Count X), and his rights under Article 26 of the Maryland Declaration of Rights (Count XIII).

I find that a reasonable jury could not find for Schloss on these counts, and thus, I grant Abey's motion for summary judgment. Many of the same facts undergirding Abey's August 2 warrant application and August 10 application for a statement of charges also support his September 7 warrant application. For example, Abey again reasonably relied on the report of Officer Lewis. Abey again based his determination of probable cause on the recovery of over one hundred photographs, which he, and two prosecutors, believed were child pornography.[12] And again, as with the August 2 and 10 applications, Abey submitted the September 7 application to two prosecutors for approval (*see* ECF No. 17, Ex. 7, ¶ 3), and a neutral magistrate

---

[11] Abey is also statutorily immune under the MTCA. Schloss again fails to put forth any "concrete evidence from which a reasonable jury" could rule in his favor on the issue of malice. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Accordingly, I grant Abey's motion for summary judgment relating to Counts IX and XII on statutory immunity grounds as well.
[12] According to Abey, Schloss sent two of those photographs from his cell phone to his email account. (ECF No. 17, Ex. 9, pp. 3–4). Schloss does not dispute this particular point.

judge approved the warrant application and issued the warrant. (*See* ECF No. 17, Ex. 9). Given

the totality of circumstances, no reasonable jury could find that the September 7 warrant

application was not justified by probable cause and thus, I grant Abey's motion for summary

judgment as it relates to Count VI.

Assuming *arguendo* that Abey did not have probable cause, because Abey's actions were

again reasonable, and two prosecutors and a neutral magistrate approved his warrant application,

Abey is entitled to qualified immunity.

Lastly, Schloss's Article 24 and 26 claims (Counts X, XIII) are derivative of his Fourth

Amendment claim. Because Schloss has failed to generate a material dispute of fact regarding

probable cause and Abey's alleged false statements, I also grant Abey's motion for summary

judgment on Counts IX and XII.[13]

### IV.   Abey's Statement to Stuart Schloss (Count XIV)

Plaintiff Stuart Schloss asserts that Abey's conversation with him, in which Abey

allegedly asked him if he was aware that Toney Schloss "butt fucked his daughter with a toy

shark" (ECF No. 4, ¶ 146) (internal alterations omitted), constitutes intentional infliction of

emotional distress ("IIED"). Abey contends that he never made the statement to Stuart Schloss

and that even if he did, his statement does not meet the elements of an IIED tort.

The tort of IIED is "rarely viable and is to be used sparingly and only for opprobrious

behavior that includes truly outrageous conduct." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665

A.2d 297, 319 (Md. App. 1995). Under Maryland law, to plead a claim for IIED, a plaintiff must

establish four elements: "(1) intentional or reckless conduct that is (2) extreme and outrageous

---

[13] I also find once again that Abey is statutorily immune under the MTCA. For Counts X and XII, Schloss recycles the same unsupported malice allegations as before and therefore, I grant Abey's motion for summary judgment on statutory immunity grounds as well.

and is (3) causally connected to the emotional distress, which is (4) severe." *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 759 (D. Md. 2015).

Here, Stuart Schloss alleges that Abey called him in New Jersey and informed him that his son was under arrest for child pornography. (ECF No. 24, Ex. 2, ¶¶ 2–3). He then alleges Abey asked him if he was aware that Toney Schloss "butt fucked his daughter (my granddaughter) with a toy shark." *Id.* at ¶ 4. As a result of Abey's question, Stuart Schloss testifies that he "lost countless nights of sleep, could not eat properly and lost weight and suffered other physical ailments." *Id.* at ¶ 8. He also alleges that he experienced "physical maladies including heart palpations, [and] changes in body temperature." *Id.* at ¶ 9.

First, I find that Abey's question, if it occurred, was not extreme and outrageous within the meaning of an IIED tort. As this Court has held, to show a defendant's conduct was extreme and outrageous:

> The defendant's conduct must be so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized [community]. Indeed, [t]o be actionable, the conduct relied upon must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.

*Respess v. Travelers Cas. & Sur. Co. of Am.*, 770 F. Supp. 2d 751, 758 (D. Md. 2011) (internal quotation marks and citations omitted). Abey's solitary statement, made in the context of a criminal investigation, and to a complete stranger, simply does not rise to the level of behavior described above. On this ground alone, I grant Abey's motion for summary judgment on Count XIV.

Alternatively, even assuming the first three elements of an IIED claim are met, and Stuart Schloss's allegations are true, Schloss has not demonstrated a reasonable jury could find that he suffered from the fourth element of the IIED tort, severe emotional distress. To show severe

emotional distress, the harm caused by defendant's conduct must be "so severe that no reasonable man in civilized society should be expected to endure it." *Jones v. NMS Health Care of Hyattsville, LLC*, 903 F. Supp. 2d 323, 329–30 (D. Md. 2012). That is, the resulting distress "must leave one unable to function and unable to tend to necessary matters." *Jones v. Family Health Centers of Baltimore, Inc.*, No. 14-762, 2015 WL 5719461, at *7 (D. Md. Sept. 28, 2015) (quoting *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1065 (Md. App. 1986)) (internal quotation marks omitted). In *Moniodis v. Cook*, 494 A.2d 212, 219 (Md. App. 1985), *superseded by statute on other grounds*, the Maryland Court of Special Appeals overturned a favorable jury verdict on three plaintiffs' IIED claims. The court found that the plaintiffs—who suffered from symptoms including increased smoking, lost sleep, hives, and emotional distress— did not prove the fourth element of an IIED claim because they continued to capably manage their own lives.

Stuart Schloss's symptoms, while problematic and certainly worthy of sympathy, are insufficient show severe extreme emotional distress within the meaning of an IIED claim. His symptoms are analogous to those of the plaintiffs in *Moniodis* and *Jones v. Family Health Centers of Baltimore, Inc.* Like the plaintiffs in those two cases, he fails to put forth concrete evidence showing he was left "unable to function" or "unable to tend to necessary matters." *Family Health Centers*, 2015 WL 5719461 at *7. Accordingly, Stuart Schloss cannot generate a material dispute of fact, and I grant Abey's motion for summary judgment on his claim.

## CONCLUSION

For the aforementioned reasons, defendant Michael Lewis's motion to dismiss, or in the alternative, for summary judgment (ECF No. 16) is granted in full as it relates to Counts I, III, and VII and is granted in part and denied in part without prejudice with respect to Count II.

Defendant William Abey's motion to dismiss, or in the alternative, for summary judgment (ECF

No. 17) is granted.

A separate order follows.

_____                    _____
Date                                                                        J. Frederick Motz
                                                                              United States District Judge

BY _____ DEPUTY

AT BALTIMORE
CLERK'S OFFICE

2016 APR 12  AM 11: 32

U.S. DISTRICT COURT
DISTRICT OF MARYLAND
FILED

29